FILED

2010 Apr-21  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CAROLYN PAGE, WENDY HICKS, and DARRYL WILSON, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civil Action No. CV-08-S-284-NE ) |
| FOURROUX ORTHOTICS & PROSTHETICS, INC., *et al.,* | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This action is before the court on the motion of defendants — Fourroux Orthotics & Prosthetics, Inc., Fourroux Prosthetics, Marvin Fourroux, and William Keith Watson — for entry of judgment on the pleadings and dismissal of all claims asserted in the fourth amended *qui tam* complaint filed by plaintiffs/relators Carolyn Page, Darryl Wilson, and Wendy Hicks (doc. no. 54). *See* Fed. R. Civ. P. 12(c). Defendants contend that plaintiffs' fourth amended complaint fails to conform to the requirements of Federal Rule of Civil Procedure 9(b).

## I.  LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate only when "there are no material facts in dispute and judgment may be

rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  When considering the substance of the pleadings, the court "must accept the facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  Dismissal should be granted pursuant to Rule 12(c) only when the court, after reviewing the pleadings, finds that plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with their allegations.  *Horsley*, 292 F.3d at 700.

## II.  FACTS

Defendants Fourroux Orthotics and Prosthetics, Inc., and Fourroux Prosthetics (hereinafter referred to jointly as "Fourroux") manufacture and supply prosthetic devices.[1]  Plaintiff/relator Carolyn Page ("Page") was employed by Fourroux from approximately October of 2005 through September of 2007.[2]  During the course of Page's employment with Fourroux, she was responsible for billing and collection of payments.[3]  One of her duties was to review the "Explanation of Benefits" forms, provided to Fourroux by Medicare, Medicaid, or private insurers following the submission of claims for payment to determine which charges had been paid by the

---

[1] Doc. no. 53 (Fourth Amended Complaint), ¶ 9.

[2] *Id.*, ¶ 10.

[3] *Id.*, ¶ 10.

insurer.[4]  If charges had not been paid, Page determined the reason for the denial, and resubmitted the claim.[5]   Page was also responsible for preparing and sending statements to patients for the balance of charges, including Medicare and Medicaid deductibles.[6]  She alleges that, during the first month of her employment, and at the direction of defendants, she "wrote off" thousands of dollars of Medicare and Medicaid patient co-payments and deductibles for which statements had not been sent to patients, and for which waivers of payment for financial hardship had not been received.[7]   She also claims that, throughout the period of her employment, she observed defendants engaging in the following acts, which resulted in the submission of fraudulent claims for payment to the United States government:

> a.   Defendants routinely submitted claims to private insurers, Medicare, and/or Medicaid for products and services that patients did not receive.
>
> b.   Defendants billed private insurers, Medicare, and/or Medicaid for higher-priced products than patients actually received
>
> c.   Patients received prosthetics and orthotics before prescriptions were received from the physician and/or before authorization had been received from the private insurer, Medicare, or Medicaid.

---

[4] *Id.*, ¶ 21.

[5] Doc. no. 53 (Fourth Amended Complaint), Ex. D (Declaration of Carolyn Page), ¶ 4.

[6] Doc. no. 53 (Fourth Amended Complaint), ¶ 24.

[7] *Id.*, ¶ 26.

d.     Defendants misrepresented services as medically necessary by falsifying documents such as diagnosis codes and changes to weight or activity level, and submitting the charges to Medicare and/or Medicaid for payment

e.     Defendants sold and billed to private insurers, Medicare, and/or Medicaid "off the shelf" products as higher-priced custom products.

f.     Defendants resold parts of previously used prosthetics as new, and filed claims for those parts with private insurers, Medicare, and Medicaid.

g.     As an inducement for patients to receive prosthetic and orthotic products and services from Fourroux, rather than from its competitors, defendants routinely waived patients' Medicare and Medicaid deductible and co-payments where the patients had not received a statement, nor had they requested waivers based on financial hardship.  Defendants routinely waived patients' Medicare deductibles and co-payments without documentation of financial hardship.[8]

Page claims that she complained to Monica Clark, the business manager for Fourroux, that the defendants' practices were illegal and fraudulent.[9]  Page alleges that she was subsequently suspended for three months and, ultimately, terminated on or about September 7, 2007.[10]

Plaintiff/relator Darryl Wilson ("Wilson") was hired by Fourroux in April of 2003, to perform orthotics fittings at local hospitals and retirement homes.[11]   He

---

[8] *Id.*, ¶¶ 35(a)-(g)..

[9] *Id.*, ¶ 39.

[10] *Id.*, ¶ 40.

[11] *Id.*, ¶ 42.

4

alleges that defendant William Keith Watson and business manager Monica Clark provided him with specific billing codes to use when performing his job duties.[12]  On August 29, 2007, however, Wilson began working "in-house" for defendants.[13]  In addition to performing orthotics fittings, one of Wilson's duties as an "in-house" employee was to enter billing codes into the defendants' medical billing software.[14] Wilson alleges that, by studying the billing codes in the billing software, he became aware that he had been using incorrect codes for certain orthotics when fitting the devices at local hospitals and retirement homes, resulting in charges that were several hundred dollars more than the amounts that should have been billed.[15]  He claims that, when he informed Monica Clark that the billing codes he had been instructed to use while working off-premises were not correct, she advised him to continue using the incorrect codes.[16]  Wilson allegedly complained to Clark that defendants were committing illegal acts by using the incorrect codes.  Wilson later was laid off, on September 19, 2007, allegedly "due to downsizing."[17]

Plaintiff/relator Wendy Hicks ("Hicks") was hired by Fourroux as a receptionist

---

[12] Doc. no. 53 (Fourth Amended Complaint), ¶ 42.

[13] *Id.*, ¶ 46.

[14] *Id.*

[15] *Id.*, ¶ 47.

[16] *See id.*, ¶ 48.

[17] *Id.*, ¶¶ 49-50.

in April of 2006.[18]   During the course of her employment with Fourroux, she was promoted to the position of insurance specialist, and her duties included reviewing patient insurance coverage and eligibility for benefits, "checking out" patients, preparing prescriptions, preparing letters of medical necessity for doctors' signatures, and soliciting prescriptions from patients' doctors.[19]   Hicks alleges that, while performing her job duties, she became aware of discrepancies between coded entries on bills from Fourroux that were submitted to private insurance companies, Medicare, and Medicaid, and the actual items delivered to patients.[20]   Hicks claims that Clark instructed her to submit information to the billing clerk for inclusion on Medicaid and Medicare bills for products that patients did not receive.[21]   She also alleges that Clark instructed her to add codes or change codes to higher priced items that the patient did not receive, and to seek new prescriptions from the patients' physicians after the patients had received their products.[22]   Hicks claims that she shredded original prescriptions, photocopied patients' signatures onto receipts, and falsified or changed dates on records reflecting the delivery of items to patients.[23]

---

[18] Doc. no. 53 (Fourth Amended Complaint), ¶ 53.

[19] *Id.*, ¶ 54.

[20] *Id.*, ¶ 55.

[21] *Id.*, ¶ 57.

[22] *Id.*, ¶ 58.

[23] *Id.*, ¶¶ 58-60.

Hicks contends that she reported her concerns regarding defendants' allegedly illegal actions to Monica Clark.[24]  Hicks' employment was subsequently terminated in August of 2007.[25]

Plaintiffs/relators Page, Wilson, and Hicks filed this *qui tam* action on February 15, 2008, alleging violations of the False Claims Act, 31 U.S.C. § 3729(a).[26]  The case was originally filed in the Southern division of the Northern District of Alabama, and assigned to Judge Karon O. Bowdre.  Plaintiffs amended the original complaint on April 22, 2008, to correct a typographical error in the style of the case.[27]  The United States notified the court that it would not intervene on April 30, 2009.[28]

On September 15, 2009, Judge Bowdre granted a motion by plaintiffs/relators to amend the complaint.  Plaintiffs filed a second amended complaint September 23, 2009.[29]  One week later, on September 30, 2009, Judge Bowdre entered an order transferring the case to the Northeastern division[30] and, thereafter, the case was reassigned to this judicial officer.  On November 5, 2009, defendants filed their first motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

---

[24] Doc. no. 53 (Fourth Amended Complaint), ¶ 56.

[25] Doc. no. 53 (Fourth Amended Complaint), Ex. C (Statement of Wendy Hicks), at 1.

[26] Doc. no. 1.

[27] *See* doc. no. 3 (First Amended Complaint).

[28] *See* doc. no. 14.

[29] Doc. no. 30 (Second Amended Complaint).

[30] Doc. no. 33.

12(c), seeking dismissal of the second amended complaint on the grounds that the *qui tam* complaint did not satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b).[31]  Plaintiffs filed a response in opposition to defendants' motion, as well as a motion for leave to file a third amended complaint.[32]

Following a hearing conducted on April 6, 2010, plaintiffs filed yet another motion to amend the complaint.[33]  The court granted plaintiffs' motion to amend on April 12, 2010, and directed the clerk to file plaintiffs' fourth amended complaint. Defendants moved for judgment on the pleadings of the fourth amended complaint on April 15, 2010, and plaintiffs responded on the same day.[34]  The court held a hearing on the motion for judgment on the pleadings on April 16, 2010.

### III. DISCUSSION

Plaintiffs' claims are based upon the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 and 3730.  The FCA imposes liability on "[a]ny person who . . . knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment."  31 U.S.C. § 3729(a)(1). Because the FCA imposes liability for fraudulent acts, Federal Rule of Civil Procedure

---

[31] Doc. no. 39.

[32] Doc. nos. 40, 41.

[33] Doc. no. 52.

[34] Doc. nos. 54, 55.

9(b) applies to claims asserted under the Act. *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301, 1311 (11th Cir. 2002).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of the particularity requirement is to "alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The particularity requirement, however, must be read in conjunction with Federal Rule of Civil Procedure 8, providing that a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Stated differently, the application of Rule 9(b) "must not abrogate the concept of notice pleading." *Clausen*, 290 F.3d at 1310.

In order to comply with Rules 8(a) and 9(b), "some indicia of reliability must be given in the complaint to support the allegation" of fraud. *Id.* at 1311. A "plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (internal quotation marks omitted). Therefore, "pleadings generally cannot be based on information and belief." *Id.*

A less stringent application of the particularity requirement is warranted when

9

specific "factual information [about the alleged fraud] is peculiarly within the defendants' knowledge or control." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga.), *reconsideration granted*, 755 F. Supp. 1055, 1058-59 (S.D. Ga. 1990); *see also Clausen*, 290 F.3d at 1314 n.25 (recognizing that "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant," *provided* "the complaint . . . set[s] forth a factual basis for such a belief" (internal quotation marks omitted)); *United States ex rel. Hill v. Morehouse Medical Associates*, No. 02-14429, 2003 WL 22019936, at *5 n.8 (11th Cir. 2003) (noting that Rule 9(b)'s heightened pleading standard may be applied less stringently when specific factual information about the fraud is "peculiarly within the defendant's knowledge or control" (internal quotation marks omitted)).

Similarly, the Eleventh Circuit has recognized that Rule 9(b)'s heightened pleading standard may be applied less stringently when "prolonged multi-act schemes are alleged." *Clausen*, 290 F.3d at 1314 n.25.

## A.    Details of Individual Fraudulent Claims Submitted to the Government for Payment

Defendants argue that plaintiffs' fourth amended complaint fails to comply with the Rule 9(b) particularity requirement because plaintiffs/relators have "not identified

a single false claim by date, amount, claim number, patient name, description of product involved, billing code, or prescription number."[35]  Put simply, defendants argue that, even though plaintiffs have alleged facts as to the time, place, and substance of the alleged fraud, they have failed to provide details as to the "who," "what," "where," "when," and "how" of improper practices.[36]

Defendants rely, in part, on the Eleventh Circuit's holding in *Clausen* to support their argument that Rule 9(b) requires relators to plead specific details of individual claims for payment submitted to the government.  In affirming the district court's dismissal of an action under the FCA, the Eleventh Circuit panel deciding *Clausen* observed, in *dicta*, that, in the complaint at issue in that case, "no amounts of charges were identified.  No actual dates were alleged . . . No copy of a single bill or payment was provided . . . [S]ome of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." 290 F.3d at 1312 n.21.  Defendants argue that, like the complaint at issue in *Clausen*, plaintiffs' fourth amended complaint fails to satisfy the minimum specificity requirements of Rule 9(b).

Plaintiffs admit that their fourth amended complaint does not identify by date, amount, claim number, patient name, or description of the prosthetic involved any

---

[35] Doc. no. 54, at 4-5.

[36] *Id.* (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).

*specific* Medicare or Medicaid claim that exemplifies Fourroux's alleged fraudulent

billing scheme.  Even so, plaintiffs, rely on the Eleventh Circuit's reasoning in an

unreported decision, *United States ex rel. Hill v. Morehouse Medical Associates*, No.

02-14429, 2003 WL 22019936, at *1-*5 (11th Cir. 2003), to support their position that

the complaint need not provide details of individual claims in order to meet the

requirements of Rule 9(b).[37]  In the *Hill* opinion, the Eleventh Circuit panel found that

the facts before it were distinguishable from those of *Clausen* and, accordingly,

reversed the district court's finding that the requirements of Rule 9(b) were not met.

*Id.* at *4-*5.  The *Hill* panel held that, even though the plaintiff/relator in that case had

not identified any claims by patient name or date of submission, the plaintiff had met

the particularity requirement of Rule 9(b) by alleging that she observed billers, coders,

and physicians alter documents and diagnosis codes and submit false claims, and by

providing the names of the employees and physicians involved in making fraudulent

changes to documents.  *Id*.  In so holding, the *Hill* panel observed that

> failure to allege patient names and the exact dates that claims were
> submitted to the government . . . is not fatal to a claim under the [False
> Claims Act].  Our precedent requires only that a plaintiff . . . plead . . .
> the details of the defendants' allegedly fraudulent acts, when they
> occurred, and who engaged in them.

*Id.* at *5 n.8 (quoting *Clausen*, 290 F.3d at 1310) (omissions in original).  The *Hill*

---

[37] See doc. no. 55, at 4-5.

panel further explained that,

> to require Hill to provide the exact dates that claims were submitted to the government would require that she violate patient confidentiality by copying private records.  As we are not prepared to encourage violations of patient confidentiality, we find that Hill need not provide the exact dates that claims were submitted to the government to satisfy Rule 9(b).

*Id.*

As defendants argue in their motion before this court, the unreported opinion in *Hill* is not binding authority.[38]  Even so, this court finds the opinion to be instructive when attempting to evaluate the sufficiency of the pleadings in the present action. Further, the Eleventh Circuit has itself recognized the rationale of the *Hill* opinion as valid, by way of distinguishing the unique facts presented by the plaintiff in *Hill* from the circumstances at issue in another *qui tam* action.  *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358-59 (11th Cir. 2006).  Similarly, other courts within the circuit have cited *Hill* as instructive.  *See, e.g., Southeast Laborers Health and Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1276 (S.D. Fla. 2009) (finding that, "[a]lthough *Hill* is not determinative, it is instructive");  *Hopper v. Solvay Pharmaceuticals, Inc.*, 590 F. Supp. 2d 1352 (M.D. Fla. 2008) (discussing and distinguishing *Hill*).  Most notably, Senior Judge William Marsh Acker, Jr. of this

---

[38] The Eleventh Circuit's rule regarding unpublished opinions reads as follows: "Unpublished opinions are considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

13

same court determined that "*Hill* contains legitimate precedential value," and adopted the reasoning of the *Hill* panel when denying a defendant's motion to dismiss. *United States ex rel. Brunson v. Narrows Health & Wellness LLC*, 469 F. Supp. 2d 1048, 1051 (N.D. Ala. 2006) (Acker, J.).

The facts that led both the Eleventh Circuit in *Hill* and Judge Acker in *Brunson* to find that the complaints in those cases met the Rule 9(b) particularity requirement are also present in this case.  Plaintiff/relator Page worked in the very department of Fourroux where the allegedly fraudulent billing schemes were implemented.  She personally observed Fourroux's billing practices, and has first-hand knowledge about defendants' implementation of the allegedly fraudulent billing schemes.  Like the plaintiff in *Hill*, the relators in this case were privy to the files, computer systems, and internal billing practices that are the subject of the complaint.  The relators in the present case witnessed the alleged use of incorrect billing codes, and alteration of billing codes.  Plaintiffs have supported their legal theory with facts describing Fourroux's billing process, the codes that were allegedly improperly used, the frequency with which the allegedly fraudulent claims were submitted, and the time frame in which the allegedly fraudulent activity occurred.  They also have provided specific names of defendants' employees responsible for the alleged fraud.  Put simply, the facts presently before this court are materially indistinguishable from those

14

in *Hill* and *Brunson*.

This court is persuaded by the reasoning of *Hill* and *Brunson* and, accordingly, rejects defendants' argument that plaintiff's complaint cannot meet the heightened pleading requirements of Rule 9(b) without alleging patient names, dates on which claims were submitted to the government, or other similar details of individual claims. On the contrary, the court finds that plaintiffs have met the particularity requirement of Rule 9(b) by providing details about defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.

**B.   First-hand Knowledge of Submission of Claims to the Government for Payment**

Defendants also rely on the Eleventh Circuit's holding in *Clausen* to argue that, in order to meet the Rule 9(b) pleading requirement, plaintiffs/relators must demonstrate first-hand knowledge of the *actual submission* of false claims to the government.[39]   Defendants emphasize that, "[w]ithout the presentment of . . . a [false or fraudulent] claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required" under the FCA.   *Clausen*, 290 F.3d at 1311.   Defendants suggest that, because none of the three relators in the present case actually submitted the original claims for payment to the government on behalf of defendants, they cannot

---

[39] *See* doc. no. 54, ¶ 6-8.

possibly have first-hand knowledge of the presentment of false claims.[40]   That argument lacks merit.

Although it is true that none of the three relators before this court was responsible for the original submission of claims for payment to Medicare or Medicaid, that fact is not sufficient to destroy the reliability of plaintiffs' allegations. The Eleventh Circuit in *Hill* emphasized that, even though the plaintiff in that case had not been responsible for the actual submission of claims for payment to the government, she had worked in the very department of the defendant company where the alleged fraudulent billing schemes occurred and, therefore, had first-hand knowledge of her former employer's billing practices, and the manner in which the fraudulent billing schemes were implemented.  *Hill*, 2003 WL 22019936, at *4.

Similar to the plaintiff in *Hill*, plaintiff Carolyn Page in the present case was privy to defendant's "files, computer systems, and internal billing practices that are vital to her legal theory." *Id.*  Page provides a detailed description of the procedures for submitting claims through the Futura medical billing software system.[41]  She also identifies specific employees of Fourroux responsible for setting up billing codes.[42] Page alleges that one of her duties was to review the Explanation of Benefits forms

---

[40] *See id.*

[41] *See* doc. no. 53 (Fourth Amended Complaint), ¶¶ 11-14, 16-20.

[42] *See id.*, ¶ 15.

provided to defendants by Medicare, Medicaid, and/or private insurers following the submission of claims, to determine which charges had been paid by Medicare or Medicaid.[43]  If charges were not paid because a claim or portion of a claim had been denied, Page determined the reason for denial and *resubmitted the claim*.[44]  Page also prepared and sent statements to patients for the balance of the charges, including the Medicare and/or Medicaid co-payments and deductibles that are alleged to have been improperly written-off.[45]  These factual allegations, which must be taken as true at this stage in the proceedings, show that Page was directly involved with the submission of claims and billing of patients.  Therefore, plaintiffs have demonstrated that at least one of the three plaintiffs/relators has first-hand knowledge of the defendants' claim submission practices, and the manner in which the allegedly fraudulent billing schemes were implemented.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, the court finds that plaintiffs' fourth amended complaint meets Rule 9(b)'s particularity requirement.  Therefore, defendants' Rule 12(c) motion for judgment on the pleadings is denied.  Defendants are ordered to file an answer to the fourth amended complaint on or before the 5th day of May, 2010.

---

[43] *Id.*, ¶ 21.

[44] Doc. no. 53 (Fourth Amended Complaint), Ex. D (Declaration of Carolyn Page), ¶ 4.

[45] Doc. no. 53 (Fourth Amended Complaint), ¶ 24.

DONE and ORDERED this 21st day of April, 2010.

United States District Judge